TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
LAUREN E. BORDER (Cal. Bar No. 327770)
Assistant United States Attorney
General Crimes Section
CLIFFORD D. MPARE (Cal. Bar No. 337818)
Assistant United States Attorney
Major Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-8231/4962
     Facsimile: (213) 894-0141
     E-mail:   lauren.border@usdoj.gov
             clifford.mpare@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>          v.<br><br>CYNTHIA RAYGOZA,<br>  aka "Cynthia Curiel Curiel,"<br>ASHLEIGH BROWN,<br>  aka "ice_out_ofla,"<br>  aka "corn_maiden_design," and<br>SANDRA CARMONA SAMANE,<br>  aka "Sandra Karmona,"<br>  aka "Sandra Carolina Carmona<br>  Samame,"<br>  aka "Sandra Carmona Samame,"<br><br>        Defendants. | No. 2:25-cr-00780-SVW<br><br>GOVERNMENT'S OMNIBUS PARTIAL<br>OPPOSITION TO DEFENDANTS' MOTIONS<br>TO DISMISS THE INDICTMENT<br><br>Hearing Date: January 26, 2026<br>Hearing Time: 11:00 a.m.<br>Location:    Courtroom of the<br>            Hon. Stephen V.<br>            Wilson |

     Plaintiff United States of America, by and through its counsel

of record, the First Assistant United States Attorney for the Central

District of California and Assistant United States Attorneys Lauren

E. Border and Clifford D. Mpare, hereby files its Omnibus Partial Opposition to defendants SANDRA SAMANE and ASHELIGH BROWN's Motion to Dismiss the Indictment (Dkts. 92, 93). The government submits that its omnibus response furthers efficiency and judicial economy, as defendants' legal claims in both motions substantially overlap, in particular defendants' First Amendment claims.

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 12, 2026          Respectfully submitted,

                                 TODD BLANCHE
                                 Deputy Attorney General

                                 BILAL A. ESSAYLI
                                 First Assistant United States
                                 Attorney

                                 ALEXANDER B. SCHWAB
                                 Assistant United States Attorney
                                 Acting Chief, Criminal Division


                                 _____/s/_____
                                 LAUREN E. BORDER
                                 Assistant United States Attorney

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

INTRODUCTION.................................................................1

STATEMENT OF FACTS..........................................................2

PROCEDURAL HISTORY..........................................................3

LEGAL STANDARD..............................................................4

ARGUMENT ...................................................................4

    A.    Count One of the Indictment Sufficiently Alleges the
          Conspiracy Crime Charged..................................5

    B.    The Anti-Doxxing Statute Is Constitutional on its Face...11

          1.    Threaten...........................................12

          2.    Intimidate.........................................13

          3.    Incite a Crime of Violence.........................13

          4.    Facilitate the Commission of a Crime of Violence....14

    C.    The Statute Is Neither Content-Based Nor Vague ..........15

    D.    The Anti-Doxxing Statute Is Constitutional as Applied
          to Defendants.............................................16

CONCLUSION.................................................................19

**TABLE OF AUTHORITIES**

**CASES**                                                                    **PAGE**

Am. Farm Bureau Fed'n v. EPA,
    836 F.3d 963 (8th Cir. 2016)................................10

Askins v. DHS,
    899 F.3d 1035 (9th Cir. 2018).........................19, 20

Beckles v. United States,
    580 U.S. 256 (2017).......................................16

Brandenberg v. Ohio,
    395 U.S. 444 (1969).......................................14

Broadrick v. Oklahoma,
    413 U.S. 601 (1973)...................................12, 13

Bryshaw v. City of Tallahassee,
    709 F. Supp. 2d 1244 (N.D. Fla. 2010)....................16

Chaplinsky v. New Hampshire,
    315 U.S. 568 (1942).......................................17

Giboney v. Empire Storage & Ice Co.,
    336 U.S. 490 (1949).......................................21

Hamling v. United States,
    418 U.S. 87 (1974).........................................6

Kaetz v. United States,
    2022 WL 1486775 (3d Cir. 2022).............................9

National Assn. of Home Builders v. Defenders of Wildlife,
    551 U.S. 644 (2007).......................................10

R.A.V. v. City of St. Paul,
    505 U.S. 377 (1992)...................................13, 17

Rehaif v. United States,
    588 U.S. 225 (2019).......................................11

Satterfield v. Simon & Schuster, Inc.,
    569 F.3d 946 (9th Cir. 2009)...............................8

U.S. Dep't of Def. v. Fed. Labor Relations Auth.,
    510 U.S. 487 (1994)........................................9

United States v. Biden,
    745 F. Supp. 3d 1001 (C.D. Cal. 2024)......................5

United States v. Blinder,
    10 F.3d 1468 (9th Cir. 1993)...............................6

ii

**TABLE OF AUTHORITIES (CONTINUED)**

United States v. Boren,
    278 F.3d 911 (9th Cir. 2002)................................6, 8

United States v. Great Northern Railway Co.,
    343 U.S. 562 (1952).........................................9

United States v. Hansen,
    599 U.S. 762 (2023)........................................15

United States v. Jensen,
    93 F.3d 667 (9th Cir. 1996).................................6

United States v. Jimenez Recio,
    537 U.S. 270 (2003).........................................8

United States v. Lane,
    765 F.2d 1376 (9th Cir. 1985).........................2, 6, 7

United States v. Meredith,
    685 F.3d 814 (9th Cir. 2012)...........................17, 18

United States v. Phillips,
    367 F.3d 846 (9th Cir. 2004)................................9

United States v. Rogers,
    751 F.2d 1074 (9th Cir. 1985)...............................5

United States v. Rundo,
    990 F.3d 709 (9th Cir. 2021)...........................13, 15

United States v. Williams,
    553 U.S. 285 (2008)....................................13, 15

Vangheluwe v. Got News, LLC,
    365 F. Supp. 3d 850 (E.D. Mich. 2019)...................1, 10

Virgina v. Black,
    538 U.S. 343 (2003)................................2, 14, 17

Watts v. United States,
    394 U.S. 705 (1969)........................................17

Williams v. Harry's Nurses Registry, Inc.,
    No. 23-CV-6661 (PKC) (TAM), 2025 WL 2481745 (E.D.N.Y. Aug.
    28, 2025)..................................................22

**STATUTES**                                                    **PAGE**

18 U.S.C. § 119.......................................*passim*

18 U.S.C. § 371.........................................5, 6

## TABLE OF AUTHORITIES (CONTINUED)

**RULES**                                                                 **PAGE**

Federal Rule of Criminal Procedure 12(b)(1)..........................5

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.   INTRODUCTION**

3

Defendants SANDRA SAMANE ("Samane") and ASHELIGH BROWN ("Brown")

4

(collectively, "defendants") improperly seek to invalidate the

5

federal anti-doxxing[1] statute, 18 U.S.C. § 119(a), which serves to

6

protect the safety and privacy of certain individuals who are often

7

targets of vengeful acts – including federal witnesses, jurors,

8

judges, and agents. Under the guise of "free speech," defendants

9

challenge the adequacy of the indictment's allegations and the

10

constitutionality of 18 U.S.C. § 119(a), both facially and as-applied

11

to defendants. Defendants' arguments fail.

12

<u>First</u>, the indictment adequately alleges a conspiracy to

13

publicly disclose the personal information of a federal agent in

14

violation of 18 U.S.C. § 119(a). Binding precedent requires only that

15

the government allege "an agreement, the unlawful object toward which

16

the agreement is directed, and an overt act in furtherance of the

17

conspiracy." <u>United States v. Lane</u>, 765 F.2d 1376, 1380 (9th Cir.

18

1985). Defendants' fact-based arguments go to the merits of the case,

19

which is to be determined at trial, not on a motion to dismiss the

20

indictment.

21

<u>Second</u>, 18 U.S.C. § 119(a) is constitutional on its face. The

22

statute complies with First Amendment jurisprudence by prohibiting

23

"true threats" and "intimidation in the constitutionally proscribable

24

sense of the word." <u>Virgina v. Black</u>, 538 U.S. 343, 359-60 (2003).

25

26

[1] Doxxing is short for "dropping documents." <u>Vangheluwe v. Got News, LLC</u>, 365 F. Supp. 3d 850, 858 (E.D. Mich. 2019). The practice

27

involves "using the Internet to source out and collect someone's personal and private information and then publicly releasing that

28

information online." <u>Id</u>. The "goal of doxxing is typically retribution, harassment or humiliation." <u>Id</u>.

Because the anti-doxxing statute is cabined to restrict only unprotected speech, it does not violate the First Amendment and is not overbroad. Nor is the statute a content-based restriction, as Congress may constitutionally bar a subset of threats or intimidating expression.

Third, the anti-doxxing statute is constitutional as applied to all defendants in this case. Defendants essentially argue that under their version of the facts, they did not engage in the offense. But that is not the question on a pretrial motion to dismiss. Accepting as true the allegations of the indictment, a properly-instructed jury could find that defendants conspired to publicize the restricted personal information (home address) of R.H. with the intent to threaten or intimidate R.H. consistent with the First Amendment.

No court has found 18 U.S.C. § 119(a) unconstitutional. This Court should not be the first and should deny defendants' motions to dismiss the indictment.

## II. STATEMENT OF FACTS

On August 28, 2025, the three defendants in this case got into Brown's car and followed an ICE agent ("R.H.")[2] from the federal building located at 300 North Los Angeles Street to his home in Baldwin Park -- approximately 15 miles and more than a 20-minute drive. R.H. realized he was being followed and tried to lose the car that was tailing him. In the meantime, he called his wife and told her they needed to leave their home as soon as possible. When defendants reached R.H.'s home in a residential neighborhood, wearing

---

[2] The complaint in this action refers to the victim as "R.R.," whereas the indictment refers to him as "R.H." Before the events in this case, the victim changed his name from R.R. to R.H. to reflect a family name.

2

black masks, they yelled at him in front of his wife and children and shouted to his neighbors while walking up and down the block that he was an ICE agent.

Defendants live-streamed the events on social media accounts, including following R.H. to the street where he lived and a confrontation with him. After R.H.'s wife and a neighbor concerned by defendants' yelling and face coverings called 911, Baldwin Park Police arrived. Defendants announced on their live-stream a street name, residence number, and city that identified R.H.'s block. They zoomed in on R.H.'s face, saying: "There's the ICE agent. This is where he lives apparently," and "the neighbors didn't know - now they know." Defendants also told the followers to "come on down" to the Baldwin Park neighborhood. Minutes later, other individuals did indeed arrive outside R.H.'s home. The individuals accosted Baldwin Park Police Officers, and one individual exclaimed: "Let's dox them!"

## III. PROCEDURAL HISTORY

For their actions, a grand jury indicted defendants on September 23, 2025, for violating 18 U.S.C. § 371: Conspiracy to Publicly Disclose the Personal Information of a Federal Agent (Count One) and 18 U.S.C. § 119(a): Publicly Disclosing the Personal Information of a Federal Agent (Count Two). (Dkt. 22.) Defendant Samane filed a motion to dismiss the indictment on December 20, 2025. (Dkt. 92, "Samane Mot.") Defendant Brown filed a motion to dismiss the indictment on December 30, 2025[3] (Dkt. 93, "Brown Mot."), with which Samane joins (Dkt. 95).

---

[3] Brown's motion was filed after this Court's deadline for filing motions. (Dkt. 68 ¶ 2(b).) The government understands defendant Raygoza anticipates filing a motion to dismiss the week of

*(footnote cont'd on next page)*

1    The government has moved to dismiss Count Two of the indictment[4]

2    (dkt. 97) and intends to proceed to trial on Count One.

3    **IV.    LEGAL STANDARD**

4    Federal Rule of Criminal Procedure 12(b)(1) provides that a

5    party may raise by pretrial motion any defense "that the court can

6    determine without a trial on the merits." "Because it is a drastic

7    step, dismissing an indictment is a disfavored remedy." United States

8    v. Rogers, 751 F.2d 1074, 1076 (9th Cir. 1985). "In ruling on a pre-

9    trial motion to dismiss an indictment for failure to state an

10   offense, the district court is bound by the four corners of the

11   indictment." United States v. Boren, 278 F.3d 911, 914 (9th Cir.

12   2002). "A motion to dismiss the indictment cannot be used as a device

13   for a summary trial of the evidence . . . The Court should not

14   consider evidence not appearing on the face of the indictment."

15   United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996) (citation

16   omitted).

17   **V.    ARGUMENT**

18   The government has met the low burden of adequately alleging a

19   conspiracy to dox a federal agent, and the anti-doxxing statute is

20   both constitutional on its face and as-applied to all defendants in

21   this case.

22

23   ───────────────────────

     January 12, 2026, which is also untimely. The Court should strike

24   defendants Brown and Raygoza's motions based on untimeliness alone.
     See, e.g., United States v. Biden, 745 F. Supp. 3d 1001, 1003 (C.D.

25   Cal. 2024)(summarily striking motion to dismiss indictment based on
     untimeliness).

26   [4] Defendants failed to state the actual home address of R.H. on
     social media, and instead said the number of a neighbor's home

27   approximately 100 feet from that of R.H. Because 18 U.S.C. § 119
     criminalizes making publicly available "the home address" of covered

28   individuals, the government has moved to dismiss the substantive
     count (Count Two).

                                    4

1    **A.    Count One of the Indictment Sufficiently Alleges the**

2    **Conspiracy Crime Charged**

3        The government has adequately alleged a conspiracy to publicly

4    disclose the personal information of a federal agent in Count One of

5    the indictment. "[A]n indictment is sufficient if it, first, contains

6    the elements of the offense charged and fairly informs a defendant of

7    the charge against which he must defend, and, second, enables him to

8    plead an acquittal or conviction in bar of future prosecutions for

9    the same offense." Hamling v. United States, 418 U.S. 87, 117,

10   (1974). The indictment itself should be "(1) read as a whole;

11   (2) read to include facts which are necessarily implied; and

12   (3) construed according to common sense." United States v. Blinder,

13   10 F.3d 1468, 1471 (9th Cir. 1993). An indictment charging a

14   conspiracy under 18 U.S.C. § 371, specifically, need only allege "an

15   agreement, the unlawful object toward which the agreement is

16   directed, and an overt act in furtherance of the conspiracy." United

17   States v. Lane, 765 F.2d 1376, 1380 (9th Cir. 1985). "Since

18   conspiracy is the gist of the crime, the indictment need not state

19   the object of the conspiracy with the detail that would be required

20   in an indictment for committing the substantive offense." Id.

21       The statute punishes, in pertinent part:

22       (a) In general.--Whoever knowingly makes restricted
         personal information[5] about a covered person,[6] or a member

23   _____

24       [5] "Restricted personal information" is a defined term, which
     "means, with respect to an individual, the Social Security number,
25   the home address, home phone number, mobile phone number, personal
     email, or home fax number of, and identifiable to, that individual."
26   18 U.S.C. § 119(b)(1).

27       [6] "Covered person" is also a defined term in the statute, and
     includes officers or employees of the United States or its agencies.
28   18 U.S.C. § 119(b)(2). Victim R.H. is alleged to be an employee of
     United States Immigration and Customs Enforcement. (Dkt. 22
     (Indictment).)

                                    5

of the immediate family of that covered person, publicly available—

(1) with the intent to threaten, intimidate, or incite the commission of a crime of violence against that covered person, or a member of the immediate family of that covered person; or

(2) with the intent and knowledge that the restricted personal information will be used to threaten, intimidate, or facilitate the commission of a crime of violence against that covered person, or a member of the immediate family of that covered person[.]

18 U.S.C. § 119.

Here, the government has alleged that beginning on a date unknown and continuing until on or about August 28, 2025, defendants knowingly and intentionally conspired to commit the offense of Publicly Disclosing the Personal Information of a Federal Agent, in violation of 18 U.S.C. § 119(a). (Dkt. 22.) The indictment identifies several overt acts in furtherance of the alleged conspiracy, including defendants following R.H. home from work, live-streaming on their social media accounts, and stating an address while encouraging viewers to "come on down." (Id.) The Ninth Circuit requires nothing more. That defendants may have failed in their attempt to stream R.H.'s address, and instead publicized the address of a neighbor 100 feet away, is not a defense to conspiracy at trial, let alone grounds to dismiss the indictment: the "essence" of a conspiracy is the agreement, rather than specific action, and the harm of the agreement exists even if the object of the conspiracy fails or is factually impossible. United States v. Jimenez Recio, 537 U.S. 270, 274 (2003)

1  (noting an "agreement is a distinct evil, which may exist and be
2  punished whether or not the substantive crime ensues") (cleaned up).[7]

3       Defendant Brown argues that an additional element should be read
4  into the statute — namely, that the restricted personal information
5  was never previously publicly available — and that the indictment is
6  insufficient because it does not include this supposed element.
7  (Brown Mot. 5-7.) According to defendant, since R.H.'s address could
8  be found in online public sources,[8] the government's failure to
9  allege defendants were the <u>first</u> ones to knowingly make the address
10 publicly available is fatal to the indictment. (<u>Id.</u>) This claim fails
11 because the statute contains no such element.

12      Brown's argument is inconsistent with the text of the statute,
13 which the Court must evaluate to determine its plain meaning. <u>See</u>
14 <u>Satterfield v. Simon & Schuster, Inc.</u>, 569 F.3d 946, 951 (9th Cir.
15 2009) ("The preeminent canon of statutory interpretation requires us
16 to presume that the legislature says in a statute what it means and
17 means in a statute what it says there. Thus, our inquiry begins with
18 the statutory text and ends there as well if the text is
19 unambiguous.") (cleaned up). The plain text of section 119 says "make
20 publicly available," not "make publicly available <u>for the first</u>
21 <u>time</u>." If Congress wanted to so limit the statute, it would have done
22 so by including such language or by limiting the definition of

---

23
24      [7] Legal impossibility (i.e., where the goal agreed to is not
   illegal), however, is a viable defense. As discussed below, legal
25 impossibility is not applicable here because the anti-doxxing statute
   does not violate the First Amendment either facially or as-applied to
26 defendants.

27      [8] Brown improperly introduces evidence beyond the four corners
   of the indictment to purport to show R.H.'s address is available
   online. <u>Boren</u>, 278 F.3d at 914 (district court is "bound by the four
28 corners of the indictment" when ruling on a motion to dismiss the
   indictment).

7

1  "restricted personal information" to cover only information not

2  already available to the public. But Congress did not do so. The

3  Court is prevented from adding words to the statute that are not

4  found in the plain text, as doing so amounts to judicial legislation.

5  See, e.g., United States v. Great Northern Railway Co., 343 U.S. 562,

6  575 (1952) ("It is our judicial function to apply statutes on the

7  basis of what Congress has written, not what Congress might have

8  written.").

9      The commonsense[9] reading of "make publicly available" is

10  synonymous with "publicize," analogous to defamation law and

11  consistent with how courts treat the release of information in other

12  contexts. See Kaetz v. United States, 2022 WL 1486775, at *1 (3d Cir.

13  2022) (describing section 119 as forbidding "publicizing restricted

14  information"); U.S. Dep't of Def. v. Fed. Labor Relations Auth., 510

15  U.S. 487, 500 (1994) ("An individual's interest in controlling the

16  dissemination of information regarding personal matters does not

17  dissolve simply because that information may be available to the

18  public in some form."); Am. Farm Bureau Fed'n v. EPA, 836 F.3d 963,

19  972 (8th Cir. 2016) ("There is an important distinction between the

20  mere ability to access information and the likelihood of actual

21  public focus on that information.") (cleaned up) (emphasis in

22  original). Indeed, one court has defined doxxing as "using the

23  Internet to source out and collect someone's personal and private

24  information and then publicly releasing that information online."

25

26      [9] Section 119 as a whole is unambiguous, such that the rule of
   lenity does not apply. See United States v. Phillips, 367 F.3d 846,
27  857 n.39 (9th Cir. 2004) (rule of lenity "applies only when there is
   grievous ambiguity or uncertainty in the statute and when, after
28  seizing everything from which aid can be derived, we can make no more
   than a guess as to what Congress intended").

1    <u>Vangheluwe v. Got News, LLC</u>, 365 F. Supp. 3d 850, 858 (E.D. Mich.

2    2019) (emphasis added).

3        Moreover, "[i]t is a fundamental canon of statutory construction

4    that the words of a statute must be read in their context and with a

5    view to their place in the overall statutory scheme." <u>National Assn.

6    of Home Builders v. Defenders of Wildlife</u>, 551 U.S. 644, 666 (2007).

7    Congress has already limited the reach of the anti-doxxing statute

8    through its definitions of "covered person" and "restricted personal

9    information," requiring the information publicly disclosed to be

10   "identifiable to [the covered] individual." 18 U.S.C. § 119(b).

11   Brown's read of the statute improperly redraws the line Congress

12   chose to limit the statute.

13       Brown also asserts that because the statute requires that the

14   defendant "knowingly" make the restricted personal information

15   available, the statute requires (and the indictment must allege) that

16   a defendant knew the publicized information was not previously

17   publicly available. But the most grammatical and logical reading of

18   the statutory language is that the defendant knowingly <u>publish</u> the

19   restricted personal information – i.e., the defendant did not

20   publicize the information by mistake or accident. The scienter

21   element of an offense is important to "separat[e] wrongful from

22   innocent acts." <u>Rehaif v. United States</u>, 588 U.S. 225, 231 (2019).

23   Here, the anti-doxxing statute already has another mens rea component

24   – a defendant must have an "intent to threaten, intimidate, or incite

25   the commission of a crime of violence" against the covered person –

26   such that defendants' proposed additional scienter element is not

27

28

necessary to separate innocent from culpable conduct.[10] Brown's reading would defang the protections of section 119 and create endless line-drawing problems.[11] This cannot be, and is not, a reasonable reading of the statute.

And to interpret the statute as Brown would have it would lead to absurd results. Take, for example, the hypothetical of a judge's daughter posting a photograph on Instagram that reveals her home address: a photograph of her family standing outside her home where the mailbox is visible. A defendant who later appears before the judge would not be subject to prosecution for posting the judge's home address on an online forum with the intent to threaten the judge due to the daughter's prior Instagram post. Similarly, a juror, informant, or witness would be cut off from statutory protection if a defendant's family member or gang associate followed her home and posted the address on Facebook to intimidate her, but her address was already listed in the Whitepages.

Separately, Brown argues the indictment must be dismissed because it does not specify the "crime of violence" Brown allegedly intended to incite. (Brown Mot. 19-21.) Even assuming this argument is applicable to the conspiracy alleged in Count One and not just the substantive count the government has moved to dismiss, at trial the

---

[10] Brown's reading of "knowingly" makes even less sense in the context of 18 U.S.C. § 119(a)(2), which specifies that a defendant must have the "intent and knowledge" that the restricted personal information will be used to threaten, intimidate, or facilitate the commission of a crime of violence. See 18 U.S.C. § 119(a)(2).

[11] For example, if someone must pay to access the information, is it "publicly available"? What if it is only available on the dark web? And if 100 people post a covered individual's home address online, would it be the government's burden to determine who did so first? How could the government prove a defendant knew the release of the restricted information was the first-ever publication?

government does not intend to proceed on the theory that defendants conspired to release R.H.'s home address with the intent to incite the commission of a crime of violence against him, or did so with the intent and knowledge that the restricted information would be used to facilitate the commission of a crime of violence against him. Defendant's argument with respect to this portion of the statute is thus moot.

Finally, defendant Samane's attack on the conspiracy count of the indictment inappropriately raises fact issues to be determined by the jury at trial and confuses the indictment pleading standard with the evidence necessary for conviction. See Samane Mot. 9-13 (arguing, among other things, that the government cannot show an agreement between Samane and the other defendants, or overt acts undertaken by Samane).

In sum, the government has surpassed the low threshold for adequately alleging a conspiracy to dox R.H., and defendants' motions to dismiss the indictment on that ground should be denied.

**B.   The Anti-Doxxing Statute Is Constitutional on its Face**

A facial overbreadth challenge permits litigants "to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." Broadrick v. Oklahoma, 413 U.S. 601, 612 (1973). The Supreme Court has long recognized, however, that invalidation for overbreadth is "strong medicine" to be applied "sparingly and only as a last resort." Id. at 613. Thus, the court must "construe the [statute] as constitutional

11

1   if [it] can reasonably do so." <u>United States v. Rundo</u>, 990 F.3d 709,

2   714 (9th Cir. 2021).

3       The first step in First Amendment overbreadth analysis is to

4   construe the challenged statute. <u>Rundo</u>, 990 F.3d at 713 (citing

5   <u>United States v. Williams</u>, 553 U.S. 285, 293 (2008)). Second, the

6   court must determine whether the statute, as construed, "prohibits a

7   substantial amount of protected speech." <u>Id.</u> (quoting <u>Williams</u>, 553

8   U.S. at 292. "The Defendants have the burden of establishing from

9   both 'the text' language and 'actual fact' that the Act is

10  substantially overbroad." <u>Id.</u>

11      The anti-doxxing statute is readily susceptible to a

12  constitutional narrowing construction because all of its operative

13  terms – threaten, intimidate, incite, and facilitation commission of

14  a crime – have recognized meanings that comport with the First

15  Amendment. The Supreme Court has explained that some "areas of speech

16  can, consistently with the First Amendment, be regulated <u>because of</u>

17  <u>their constitutionally proscribable content</u>." <u>R.A.V. v. City of St.</u>

18  <u>Paul</u>, 505 U.S. 377, 383 (1992). The categories of speech proscribed

19  by the anti-doxxing statute all fall within the bounds of previously

20  recognized speech that is unprotected by the First Amendment.

21          1.   <u>Threaten</u>

22      The statute prohibits speech with the intent to threaten, 18

23  U.S.C. § 119(a)(1), or with the knowledge and intent that the

24  contents of the speech will be used to threaten, <u>id.</u> § 119(a)(2), a

25  covered person. The First Amendment allows prohibitions on "true

26  threats," "where the speaker means to communicate a serious

27  expression of an intent to commit an act of unlawful violence to a

28  particular individual or group of individuals." <u>Black</u>, 538 U.S. at

359. Construed to require a "true threat," the anti-doxxing statute does not prohibit protected speech.

### 2.    Intimidate

The statute prohibits speech with the intent to intimidate, 18 U.S.C. § 119(a)(1), or with the knowledge and intent that the contents of the speech will be used to intimidate, id. § 119(a)(2), a covered person. "Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." Black, 538 U.S. at 360. As with the prohibition on threats, so construed, the prohibition on intimidation in the anti-doxxing statute is consistent with the First Amendment.

### 3.    Incite a Crime of Violence

The statute prohibits speech with the intent to incite the commission of a crime of violence against a covered person. 18 U.S.C. § 119(a)(1). The Supreme Court has held that "the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." Brandenberg v. Ohio, 395 U.S. 444, 447 (1969). The anti-doxxing statute used the word "incite" and that word should, consistent with Brandenberg, be read to apply to speech directed at producing an imminent lawless action (here, a crime of violence) and which is likely to incite or produce such action. Read in the context of the constitutional meaning assigned to the word "incite," the

anti-doxxing statute is consistent with the First Amendment. See Rundo, 990 F.3d at 713.

### 4. Facilitate the Commission of a Crime of Violence

Finally, the statute prohibits making restricted personal information publicly available with the knowledge and intent that the information will be used to facilitate the commission of a crime of violence against a covered person. 18 U.S.C. § 119(a)(2). The term "facilitate" is not defined in the statute, but the Supreme Court has recently explained that "[f]acilitation—also called aiding and abetting—is the provision of assistance to a wrongdoer with the intent to further an offense's commission." United States v. Hansen, 599 U.S. 762, 771 (2023). This is a "longstanding criminal theor[y] targeting those who support the crimes of a principal wrongdoer." Id.

In Hansen, the Supreme Court analyzed "[a] federal law prohibit[ing] 'encourag[ing] or induc[ing]' illegal immigration." Id. at 766 (quoting 8 U.S.C. § 1324(a)(1)(A)(iv)) (final two alterations in original). The Hansen Court held that the statute's prohibitions were consistent with the First Amendment: "Properly interpreted, this provision forbids only the intentional solicitation or facilitation of certain unlawful acts. It does not 'prohibi[t] a substantial amount of protected speech'—let alone enough to justify throwing out the law's 'plainly legitimate sweep.'" Id. (quoting Williams, 553 U.S. 285, 292 (2008)).

Like the statute at issue in Hansen, the anti-doxxing statute prohibits only speech made with the knowledge and intent that it facilitates (i.e., aids and abets) the commission of a crime of violence. And like the statute at issue in Hansen, this portion of the anti-doxxing statute is consistent with the First Amendment.

14

Thus, each prohibited category of speech identified in the anti-doxxing statute falls squarely within a recognized exception to the protections of the First Amendment. No case cited by defendants supports a different conclusion. Defendant Brown relies on a Florida district court case analyzing a state law that outlawed speech made, among other things, "maliciously, with intent to obstruct the due execution of the law." Bryshaw v. City of Tallahassee, 709 F. Supp. 2d 1244, 1247 (N.D. Fla. 2010). Unlike the anti-doxxing statute at issue here, the law in Bryshaw prohibited a range of conduct far afield from the recognized First Amendment exceptions discussed above. That case is irrelevant to the anti-doxxing statute.

In sum, section 119 does not prohibit a substantial amount of protected speech – indeed, it does not prohibit any protected speech.

## C.   The Statute Is Neither Content-Based Nor Vague

Defendants also claim that section 119 is a content-based regulation, such that it must survive strict scrutiny.  Not so. As the Supreme Court explained in Black, not all content discrimination violates the First Amendment:

> When the basis for the content discrimination consists entirely of the very reason the entire class of speech at issue is proscribable, no significant danger of idea or viewpoint discrimination exists.  Such a reason, having been adjudged neutral enough to support exclusion of the entire class of speech from First Amendment protection, is also neutral enough to form the basis of distinction within the class.

Id. at 361-62 (quoting R.A.V., 505 U.S. 377 at 388). Since the State can criminalize all threats or all intimidating messages, Black explained, it can choose to ban only threats against the President or (as in Black) only cross-burnings with intent to intimidate. Id. at 363. What a State cannot do, consistent with the First Amendment, is,

15

1  for example, to ban cross-burning only by those who provoke violence
2  on the basis of race, creed, religion, or gender, but not those who
3  use the same expression in connection with other ideas – such as to
4  express hostility based on political affiliation, union membership,
5  or homosexuality. Id. at 361 (distinguishing R.A.V. from cross-
6  burning statute upheld in Black). Like the statute upheld in Black,
7  the anti-doxxing statute here proscribes speech in a viewpoint
8  neutral manner; it does not matter why an individual publicizes
9  restricted information with intent to threaten or intimidate. There
10  is no unconstitutional content discrimination.

11      Defendant Samane's passing claim (Samane Mot. 6) that the statue
12  is unconstitutionally vague also fails. "[T]he void-for-vagueness
13  doctrine requires that a penal statute define the criminal offense
14  with sufficient definiteness that ordinary people can understand what
15  conduct is prohibited and in a manner that does not encourage
16  arbitrary and discriminatory enforcement." Beckles v. United States,
17  580 U.S. 256, 262 (2017). "Intent to threaten" has a settled legal
18  meaning, as explained above, and "restricted personal information" is
19  explicitly defined in the statute in concrete terms.  The statute
20  easily passes muster on this ground.

21      **D.    The Anti-Doxxing Statute Is Constitutional as Applied to**
22          **Defendants**

23      Defendants also claim the indictment should be dismissed because
24  the anti-doxxing statute, as applied to the alleged conduct, is
25  unconstitutional. But as described above, it is well-established that
26  certain categories of speech are excluded from the protections of the
27  First Amendment. See Chaplinsky v. New Hampshire, 315 U.S. 568, 571-
28  72 (1942). These categories of speech include obscenity, defamation,

16

1   fraud, incitement, true threats, and speech integral to criminal

2   conduct. See Watts v. United States, 394 U.S. 705 (1969); United

3   States v. Meredith, 685 F.3d 814, 819 (9th Cir. 2012).

4       In their motions, defendants assert that the expressions of

5   speech during their doxxing conspiracy fall outside of these

6   categories of speech.

7       Specifically, defendant Brown claims that the speech alleged in

8   the indictment is "core protected speech, particularly since it

9   occurred as part of a politically motivated protest." (Brown Mot.

10  18.) Defendant Samane similarly argues that she did not "engage in,"

11  "endorse," or "repeat" the proscribed speech. (Samane Mot. 6-7.) She

12  argues that the application of the doxxing statute to her with

13  respect to the charged conduct "punishes her solely for her presence

14  and occasional political commentary." (Id.) Whether the trier of fact

15  agrees with defendants' version of the events is a matter for a

16  properly-instructed jury at trial. The only question at this stage is

17  whether the indictment's allegations are sufficient. They are.

18      The indictment alleges several overt acts which, when considered

19  in concert, support the alleged conspiracy. Specifically, in support

20  of the conspiracy count, the government alleges that defendants

21  Brown, Samane, and Raygoza followed R.H. from a federal building

22  located in downtown Los Angeles to his home in Baldwin Park, nearly

23  15 miles from the federal building. After following R.H. to his home,

24  defendants initiated live-streams on their separate Instagram social

25  media accounts. During the live-stream, defendants provided

26  information to their viewers specifically related to R.H., his

27  employment at ICE, and his current location, as well as the street of

28  his permanent residence.

1    Defendants encouraged viewers to broadly publicize their live

2    streams to "share ICE is in Baldwin Park," and to "get it out."

3    Specifically, defendants called for their Instagram following to

4    broadly disseminate information about R.H. In a similar fashion,

5    defendants shouted at other Baldwin Park residents, exclaiming to

6    R.H.'s neighbors that "ICE lives on your street and you should know,"

7    and "la migra lives here."  As the indictment alleges, defendants

8    encouraged viewers of their social media posts and others to follow

9    R.H to his personal residence in order to threaten and intimidate the

10   agent. This conduct falls squarely within the ambit of the doxxing

11   statute and the First Amendment as applied to defendants.

12    The government does not dispute that citizens may take

13   photographs and record immigration activities on public streets a

14   significant distance from border security while officers conduct

15   official immigration duties. Askins v. DHS, 899 F.3d 1035, 1044 (9th

16   Cir. 2018). But that is not what is alleged here. R.H. was not

17   conducting any official duties when defendants approached him and

18   began live-streaming him on the street of his neighborhood right

19   outside his home. Brown's own motion acknowledges this weakness –

20   noting that Askins stands for the proposition that the First

21   Amendment only shielded the plaintiffs' activity because CBP officers

22   were performing their official duties. Id. There is no credible

23   argument that defendants believed R.H. was performing official duties

24   as he approached the driveway of his home, alone, in a quiet Baldwin

25   Park neighborhood.

26    Defendant Samane's challenge is equally unpersuasive. The

27   government has charged defendant Samane with conspiring to dox R.H.

28   As such, the government must prove defendant Samane entered into the

agreement to publicize R.H.'s home address with intent to threaten or intimidate the agent. The overt acts, as alleged in the indictment, sufficiently allege that defendant Samane also joined the conspiracy. Samane can challenge the government's evidence at trial, but not on a motion to dismiss the indictment.

Even accepting defendants' propositions that their initial goal was to follow R.H. to a suspected ICE operation, that goal changed by the time they arrived at R.H.'s Baldwin Park neighborhood. After that point, defendants engaged in conduct clearly intended to threaten and intimidate R.H., while also encouraging others to travel to R.H.'s home and neighborhood. Such conduct falls directly in the ambit of unlawful activity anticipated by the doxxing statute.

For the same reasons, defendants' arguments about their purported political activity fail. Defendants agreed to publicize where R.H. lived, coaxed people to come to that location, and shared information with R.H.'s neighbors in a manner seeking to threaten and intimidate R.H. Such speech, as discussed above, falls outside of the protections of the First Amendment.

In sum, many of defendants' arguments are questions of fact which must be assessed by a jury. To the extent any of these factual challenges to defendants' involvement must be addressed at trial, this Court can tailor jury instructions to govern the jury's evaluation of the facts as applied to the law.

## VI.    CONCLUSION

"While doxxing is an inherently online activity, its repercussions can be very real." Williams v. Harry's Nurses Registry, Inc., No. 23-CV-6661 (PKC) (TAM), 2025 WL 2481745, at *9 (E.D.N.Y. Aug. 28, 2025) (noting doxxing can cause physical world threats,

post-traumatic stress disorder, depression, and serious emotional distress). For the foregoing reasons, the government respectfully requests that this Court uphold the federal anti-doxxing statute and deny defendants Samane and Brown's Motions to Dismiss the Indictment (dkts. 92, 93).