TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
CLIFFORD D. MPARE (Cal. Bar No. 337818)
Assistant United States Attorney
Major Crimes Section
LAUREN E. BORDER (Cal. Bar No. 327770)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4962/8231
     Facsimile: (213) 894-0141
     E-mail:    clifford.mpare@usdoj.gov
                lauren.border@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:25-cr-00780-SVW |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION IN LIMINE #2 TO ADMIT RELEVANT EVIDENCE OF CONDUCT POST-LIVESTREAM |
| v. | |
| CYNTHIA RAYGOZA, aka "Cynthia Curiel Curiel," ASHLEIGH BROWN, aka "ice_out_ofla," aka "corn_maiden_design," and SANDRA CARMONA SAMAME, aka "Sandra Karmona," aka "Sandra Carolina Carmona Samame," aka "Sandra Carmona Samane," | Hearing Date: February 9, 2026 at 11:00 a.m.<br>Trial Date: February 24, 2026<br>Time: at 9:00 a.m.<br>Location: Courtroom of the Hon. Stephen V. Wilson |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the Assistant United States Attorneys Clifford D. Mpare and Lauren E. Border, hereby files its motion in limine to admit

evidence related to conduct occurring after defendants' livestream in Baldwin Park near R.H.'s home, including (1) the arrival of social media followers to the Baldwin Park neighborhood, (2) conduct engaged in by social media followers upon arrival, and (3) statements made by social media followers to Baldwin Park police officers.

This motion in limine is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 27, 2026              Respectfully submitted,

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

          /s/
CLIFFORD D. MPARE
LAUREN E. BORDER
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendants CYNTHIA RAYGOZA ("Raygoza"), ASHLEIGH BROWN ("Brown"), and SANDRA SAMAME ("Samame") (collectively, "defendants") followed an ICE agent home from work, harassed him and his family, and live-streamed on social media an address approximately 100 feet from the agent's home, inviting viewers to "come on down." Defendants have been indicted with (1) conspiring to release restricted personal information of an ICE agent, and (2) stalking him.

The government intends to offer in its case-in-chief several pieces of evidence relating to conduct occurring directly after defendants live-streamed the neighborhood address of the ICE agent. First, the government will seek to introduce evidence of the response to defendants' live-stream. Specifically, the government will present testimony that after providing information about the ICE agent's neighborhood on their live-streams, other individuals arrived in the neighborhood. Second, the government will seek to introduce evidence of the Baldwin Park Police Department's ("BPPD") response to defendants' conduct. Specifically, the government will present testimony about BPPD's response, and recordings of body-worn video memorializing that response, including, among other things, a comment by one of the individuals arriving in the neighborhood exclaiming, "Let's dox them!" Both these threads of evidence are directly relevant to the government's case-in-chief and should be admitted under Federal Rule of Evidence 403.

## II. FACTUAL BACKGROUND

### A. Defendants Follow R.H. Home from Work to Harass Him

On August 28, 2025, the three defendants in this case got into Brown's car and followed an ICE agent ("R.H.")[1] from the federal building located at 300 North Los Angeles Street to his home in Baldwin Park -- approximately 15 miles and more than a 20-minute drive. R.H. realized he was being followed, but believed he had lost the car that was tailing him. When defendants reached R.H.'s home in a residential neighborhood, wearing black masks, they yelled at him in front of his wife and children and shouted to his neighbors while walking up and down the block that he was an ICE agent.

Defendants live-streamed the events on social media accounts. This live-stream captured defendants following R.H. to the street where he lived and their subsequent confrontation with him. R.H.'s wife, and a neighbor concerned by defendants' yelling and face coverings, separately called 911. Shortly after their calls, BPPD officers arrived. Defendants announced on their live-stream a street name, residence number, and city that identified R.H.'s block. They zoomed in on R.H.'s face, saying: "There's the ICE agent. This is where he lives apparently," and "the neighbors didn't know - now they know." Defendants also told the followers to "come on down" to the Baldwin Park neighborhood. Minutes later, other individuals did indeed arrive outside R.H.'s home. The individuals verbally accosted the BPPD officers, and one individual exclaimed: "Let's dox them!"

---

[1] The complaint in this action refers to the victim as "R.R.," whereas the indictment refers to him as "R.H." Before the events in this case, the victim changed his name from R.R. to R.H. to reflect a family name.

2

### B. Procedural History

For their conduct, a grand jury indicted defendants on September 23, 2025, in a two-count indictment charging defendants with conspiracy (18 U.S.C. § 371) and publicly disclosing the victim's personal address (18 U.S.C. § 119(a)). The government ultimately determined that defendants failed to state the victim's actual home address, as required under 18 U.S.C. § 119(a), and instead said the number of a neighbor's home approximately 100 feet from the victim's home. (Dkt. 98 at 4 n.4.) Accordingly, the government moved to dismiss, and the Court dismissed Count Two of the indictment. (Dkts. 97, 99.)

Then, on January 15, 2026, a grand jury returned a first superseding indictment charging defendants with the same conspiracy and adding a charge of stalking (18 U.S.C. § 2261A) (Dkt. 103). The conspiracy charge in the superseding indictment amended the allegation to indicate that defendants disclosed "an address approximately 100 feet" from the victim's home.[2]

## III. ARGUMENT

### A. Legal Standard

Evidence must be relevant to defendant's guilt to be admissible. Any evidence that is "relevant" to the charged offenses "is admissible," unless otherwise prohibited by federal law. See Fed. R. Evid. 402. Under Rule 401, "[e]vidence is relevant if" "it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). Thus, to

---

[2] Counsel for Samame also informed the government that her true and correct last name is "Samame" rather than "Samane," thus the government corrected the indictment accordingly.

3

be directly "relevant" to the charged crimes, evidence need not be conclusive proof of a fact sought to be established, or even strong evidence of the same. All that is required is a "tendency" to establish the fact at issue. Id.

Accordingly, evidence that tells the "story of guiltiness" or provides context to the charged crimes is direct evidence and should be admitted. Old Chief v. United States, 519 U.S. 172, 188 (1997) ("[T]he prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much to point to the discrete elements of a defendant's legal fault.")

The Court may "exclude relevant evidence" if the probative value is outweighed by a "danger" of "unfair prejudice, confusing the issues, misleading the jury, undue delay," or "wasting time." Fed. R. Evid. 403. Because "relevant evidence is inherently prejudicial," it is "only unfair prejudice, substantially outweighing probative value" that justifies "exclusion of relevant matter under Rule 403." United States v. Hankey, 203 F.3d 1160, 1172 (9th Cir. 2000).

**B.   The Court Should Admit the Proffered Evidence as Relevant**

The government must prove three elements to establish defendants' guilt for conspiracy: First, that beginning and ending on August 28, 2025, there was an agreement between defendants to commit a violation of 18 U.S.C. § 119(a),[3] which prohibits doxxing federal

---

[3] The anti-doxxing statute, in turn, makes it a crime to: (1) knowingly make restricted personal information about a covered person, or a member of the immediate family of that covered person, publicly available; (2) with the intent to threaten, intimidate, or incite the commission of a crime of violence against that covered
*(footnote cont'd on next page)*

4

1 agents; second, that defendants became members of the conspiracy
2 knowing of at least one of its objects and intending to help
3 accomplish it; and third, that one of the defendants of the
4 conspiracy performed at least one overt act on or after August 28,
5 2025 for the purpose of carrying out the conspiracy.  Ninth Circuit
6 Model Criminal Jury Instructions, No. 11.1 (2024 ed.).

7 The government must also prove three elements to establish
8 defendants' guilt for stalking: that defendants (1) with the intent
9 to harass or intimidate another person, or placing under surveillance
10 with the intent to harass or intimidate another person, (2) used the
11 mail, any interactive computer service or electronic communication
12 service or electronic communication system of interstate commerce, or
13 any other facility of interstate or foreign commerce; (3) to engage
14 in a course of conduct that caused, attempted to cause, or would
15 reasonably be expected to cause, substantial emotional distress to
16 that person, or an immediate family member of that person, or a
17 spouse or intimate partner of that person.  See 18 U.S.C.
18 § 2261A(2)(b).

19 The proffered evidence is directly relevant to these charges and
20 tends to prove defendants' guilt for both conspiracy and stalking.
21 The proffered evidence is not unduly prejudicial, as it is not
22 intended to be introduced to confuse the issues, mislead the jury,
23 cause undue delay, or waste time.  As such, the proffered evidence
24 should be admitted consistent with Rule 403.
25 / /

---

person, or a member of the immediate family of that covered person; or with the intent and knowledge that the personal information will be used to threaten, intimidate, or facilitate the commission of a crime of violence against that covered person, or a member of the immediate family of that covered person.

5

1. The Proffered Evidence is Relevant

The government intends to introduce evidence in its case-in-chief related to the direct aftermath of defendants' live stream in R.H.'s neighborhood. Specifically, the proffered evidence will show that within minutes of defendants' confrontation with R.H., and defendants' instruction via live-stream for viewers to "come on down" to R.H.'s neighborhood, a collection of individuals did – in fact – arrive in the residential area of Baldwin Park near R.H.'s home. What occurred next is unsurprising. After responding to calls about a disturbance in the neighborhood, BPPD officers and the group of individuals that had come to the neighborhood began to address one another heatedly. During this interaction, which is captured on video, one of the protestors can audibly be heard exclaiming, "Let's dox them!"[4] The government intends to introduce evidence of the influx of people entering the Baldwin Park area after defendants' live-stream, BPPD's response to this event, and the statement made by one of the individuals regarding doxxing BPPD officers.

This evidence is relevant to both charges. With respect to the conspiracy to dox R.H., the evidence relates to defendants' mental state, i.e., whether defendants intended to enter into the agreement to publicize R.H.'s address. The proffered evidence that: (1) minutes after defendants' live-stream other individuals arrived at the Baldwin Park neighborhood referenced in the videos; and (2) one of the unidentified co-conspirators specifically suggested doxxing the law enforcement officers responding to the incident, tend to prove defendants entered into the conspiracy intending to dox R.H.

---

[4] The video has been produced to all parties as USAO_BWC_008.

Similarly, for the stalking count, the government must prove beyond a reasonable doubt that defendants' course of conduct caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to R.H. or his immediate family members. One of defendants' purposes in live-streaming R.H.'s neighborhood and the location of his home was for other people to come to his neighborhood. In sum, the entire purpose of their actions was to cause discomfort and emotional distress to R.H. and his family. The conduct that occurred after, including the altercation with BPPD officers, illuminates defendants' purpose and the measures they took to satisfy that purpose. As a related point, the government must prove that defendants had the intent to harass or intimidate another person, or placed under surveillance with the intent to harass or intimidate another person. The proffered evidence tends to support this charge as well for similar reasons. Namely, this evidence shows not only that defendants placed R.H. under surveillance (by live-streaming him, his address, and his family), but also that they intended to harass or intimidate him by calling for other individuals to arrive at the neighborhood for the same purpose. And evidence of the altercation between these individuals and BPPD further supports that defendants knew and intended for such activity to occur when they began to live-stream and provide information about R.H. in a public fashion. The evidence is integral to the government's ability to tell the "story of guiltiness" or provides context to the charged crimes is direct evidence and should be admitted. <u>Old Chief v. United States</u>, at 188. Indeed, the proffered evidence is directly relevant in assisting the jury to understand defendants' mental state, and the harassing or

7

intimidating nature of their conduct, and is thus admissible under Rule 403.

### 2. The Proffered Evidence is Not Unduly Prejudicial

Whatever inherent prejudicial impact the proffered evidence has is minimal and does not substantially outweigh its probative value. To the contrary, as outlined above, the proffered evidence will assist the jury in understanding the sequence of events that establishes defendants' mental state. The proffered evidence will establish a clear timeline between (1) defendants' initial agreement; (2) their rally cry for others to assist in the intimidation and harassment of R.H. and his family; (3) the direct response of others to defendants' call; and (4) the ultimate goal of defendants in advertising R.H.'s address to their social media onlookers. Each of these inquiries is critical to the jury's understanding of the government's theory and, in sum, outweighs any limited prejudice the proffered evidence inherently holds. Accordingly, the evidence is both relevant and admissible and the Court should grant the government's motion in limine.