TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
LAUREN E. BORDER (Cal. Bar No. 327770)
Assistant United States Attorney
General Crimes Section
CLIFFORD D. MPARE (Cal. Bar No. 337818)
Assistant United States Attorney
Major Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-8231/4962
     Facsimile: (213) 894-0141
     E-mail:   lauren.border@usdoj.gov
                 clifford.mpare@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:25-cr-00780-SVW |
|---|---|
| Plaintiff, | GOVERNMENT'S OMNIBUS OPPOSITION TO DEFENDANT RAYGOZA AND BROWN'S MOTIONS TO DISMISS COUNT TWO OF THE SUPERSEDING INDICTMENT (DKTS. 114, 127) |
| v. | |
| CYNTHIA RAYGOZA,<br>  aka "Cynthia Curiel Curiel,"<br>ASHLEIGH BROWN,<br>  aka "ice_out_ofla,"<br>  aka "corn_maiden_design," and<br>SANDRA CARMONA SAMAME,<br>  aka "Sandra Karmona,"<br>  aka "Sandra Carolina Carmona Samame,"<br>  aka "Sandra Carmona Samane," | Hearing Date: February 9, 2026<br>Hearing Time: 11:00 a.m.<br>Location:    Courtroom of the Hon. Stephen V. Wilson |
| Defendants. | |

     Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Lauren

E. Border and Clifford D. Mpare, hereby files its Omnibus Opposition to defendants CYNTHIA RAYGOZA and ASHLEIGH BROWN's Motion to Dismiss Count Two of the Superseding Indictment (dkts. 114, 127).

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 3, 2026           Respectfully submitted,

                                  TODD BLANCHE
                                  Deputy Attorney General

                                  BILAL A. ESSAYLI
                                  First Assistant United States Attorney

                                  ALEXANDER B. SCHWAB
                                  Assistant United States Attorney
                                  Acting Chief, Criminal Division


                                        /s/
                                  LAUREN E. BORDER
                                  Assistant United States Attorney

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendants CYNTHIA RAYGOZA ("Raygoza") and ASHLEIGH BROWN ("Brown") have filed a motion to dismiss Count Two of the superseding indictment, which charges defendants with violating U.S.C. §§ 2261A(2)(B), 2261(b)(5): Stalking. (Dkts. 114, 127 ("Mot.").) According to defendants, the facts in the indictment fail as a matter of law to adequately allege the "course of conduct" necessary to support a charge of stalking, because defendants' harassing acts happened to all occur on the same day.

A "course of conduct" is statutorily defined as "a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose."  18 USC § 2266(2).  No case law known to the government has imposed a temporal requirement to establish a course of conduct. Rather, the Ninth Circuit precedent focuses on defendants' various acts -- both speech and non-speech conduct -- as the plain language of the statute requires. <u>United States v. Osinger</u>, 753 F.3d 939 (9th Cir. 2014).  The superseding indictment alleges <u>eleven</u> acts constituting defendants' course of conduct on August 28, 2025.  This is more than sufficient.

Brown's secondary argument – that applying the stalking charge in this case violates the First Amendment – also has no merit. Defendants' harassing conduct is not protected by the First Amendment.  The Court should deny defendants' motions and their continued attempt to improperly litigate this case in front of the Court instead of a jury.

## II. STATEMENT OF FACTS

The facts of this case are well-known to the Court: On August 28, 2025, the three defendants got into Brown's car and followed an ICE agent ("R.H.") from the federal building to his home in Baldwin Park. Wearing black masks, they yelled at him in front of his wife and children and shouted to his neighbors while walking up and down the block that he was an ICE agent. Defendants live-streamed the events on social media accounts, including by announcing a street name, residence number, and city that identified R.H.'s block, and invited others to join them. In response to the live-stream, other individuals did indeed arrive outside R.H.'s home, who continued to verbally accost R.H. and the law enforcement that had arrived on scene in response to 911 calls.

On January 15, 2026, a grand jury returned a superseding indictment charging defendants with violating 18 U.S.C. § 371: Conspiracy to Publicly Disclose the Personal Information of a Federal Agent (Count One), and 18 U.S.C. §§ 2261A(2)(B), 2261(b)(5): Stalking (Count Two). Count Two of the superseding indictment alleges that defendants intended to harass and intimidate R.H. on August 28, 2025 and caused substantial emotional distress to R.H. and his family.[1] (Dkt. 103 (superseding indictment).) Defendants' course of conduct to achieve this included, among other things: following R.H. home from work and live-streaming it; yelling at R.H. and his family while wearing black masks, prompting a neighbor to call 911; shouting to

---

[1] As the government's opposition to defendant Brown's motion in limine number 3 highlights, R.H.'s family suffered such distress from defendants' actions on August 28, 2025 that they sold their home and moved to a different area of Los Angeles approximately three months later.

2

bystanders and residents while live-streaming that their "neighbor is ICE"; publicly disclosing on social media an address approximately 100 feet from R.H.'s home and inviting views to "come on down"; calling R.H. a "piece of shit," "fucking idiot," and "traitor"; taunting R.H.'s wife by calling her a "white bitch" while live-streaming; and threatening to throw objects at R.H. and "pop" him. (Dkt. 103 ¶ 2.)

On January 24, 2026, Raygoza filed a motion to dismiss the Count Two of the superseding indictment, arguing it "fail[s] to allege an indictable offense" because there was no "course of conduct" under the stalking statute. (Raygoza Mot. 4.) On February 2, 2026, Brown also filed a motion to dismiss Count Two, joining Raygoza's argument and arguing the stalking count should also be dismissed under the First Amendment. (See generally Brown Mot.)

### III. LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(1) provides that a party may raise by pretrial motion any defense "that the court can determine without a trial on the merits." "Because it is a drastic step, dismissing an indictment is a disfavored remedy." United States v. Rogers, 751 F.2d 1074, 1076 (9th Cir. 1985). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." United States v. Boren, 278 F.3d 911, 914 (9th Cir. 2002). "A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence . . . The Court should not consider evidence not appearing on the face of the indictment." United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996) (citation omitted).

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117, (1974).  The indictment itself should be "(1) read as a whole; (2) read to include facts which are necessarily implied; and (3) construed according to common sense." United States v. Blinder, 10 F.3d 1468, 1471 (9th Cir. 1993).

## IV. ARGUMENT

### A. The Government Has Adequately Alleged a "Course of Conduct"

The government has met the low burden of adequately alleging a violation of 18 U.S.C. § 2261A(2)(B) in the superseding indictment. Defendant Raygoza's sole argument is that the government fails to allege, as a matter of law, a "course of conduct" that caused substantial emotional distress to R.H. or his family. See Mot. 7 (citing 18 U.S.C. § 2261A(2)(B)).  Defendant asserts, without legal support, that because the indictment alleges events that occurred on the same day rather than over months or even years, defendants' harassment does not amount to a "course of conduct." (See generally Raygoza Mot.)

A "course of conduct" is defined by statute as "a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose."  18 USC § 2266(2).  This definition, by its plain language, focuses on the number of acts; there is no temporal requirement to transform actions into a "course of conduct."  A jury need not even unanimously agree on which two or more acts constitute the course of conduct to convict defendants. United States v. Ackell, 907 F.3d 67,

4

1  79 (1st Cir. 2018); United States v. Gonzalez, 905 F.3d 165, 185 (3d
2  Cir. 2018).  Nor must each act involve a "facility of interstate
3  commerce," e.g., a phone.  United States v. Shrader, No. CRIMA 1:09-
4  CR-00270, 2010 WL 2425900, at *4 (S.D.W. Va. June 10, 2010), aff'd,
5  675 F.3d 300 (4th Cir. 2012) ("The statute does not require a use of
6  interstate commerce facilities for each of the two or more acts which
7  comprise 'course of conduct.'")  As the Third Circuit has recognized,
8  "[t]he focus is not on the individual acts as separate, distinct
9  events, but instead on the purpose and scope of the defendants'
10 pattern of stalking conduct as a whole."  Gonzalez, 905 F.3d at 186.
11      None of the case law Raygoza cites stands for the proposition
12 that a "course of conduct" alleged in the indictment must consist of
13 acts that occur over a certain period of time.  (See Raygoza Mot. 8-
14 10.)  Rather, Ninth Circuit precedent supports that a "course of
15 conduct" merely requires two or more acts undertaken with the
16 requisite mens rea.  In United States v. Osinger, 753 F.3d 939 (9th
17 Cir. 2014), the issue before the Circuit was whether 18 U.S.C.
18 § 2261A is facially unconstitutional under the First Amendment.  The
19 Circuit held it was not, because it regulates conduct rather than
20 speech.  Osinger, 753 F.3d at 944 ("[t]he proscribed acts are
21 tethered to the underlying criminal conduct and not to speech").  As
22 to the defendant's course of conduct, the Ninth Circuit noted it
23 consisted of "showing up at [the victim]'s home," creating "a false
24 Facebook page," and sending texts and emails.  Id. at 952-53
25 (Watford, J., concurring).  In his concurrence, Judge Watford
26 emphasized that it was a particularly "straightforward case [because]
27 Osinger committed the offense by engaging in both speech and
28 unprotected non-speech conduct."  Id.; see also id. ("Here, the non-

5

speech conduct consisted of in-person harassment, which, together with the text messages, emails, and Facebook page, violated § 2261A(2)."). The Circuit, wisely, did not impose any requirement that a defendant's "course of conduct" occur over "multiple [ ] acts . . . over a period of time" as Raygoza suggests, and the government knows of no case law suggesting otherwise.[2] (Raygoza Mot. 8.)

As in Osinger, the superseding indictment in this case alleges defendants' acts consisted of both speech and unprotected non-speech, making it particularly "straightforward" and sufficient to establish a "course of conduct" under 18 U.S.C. § 2261A. The indictment alleges that defendants, aiding and abetting each other, followed R.H. from his work to his personal residence, harassed R.H. and his family in-person, filmed R.H. and live-streamed the block R.H. lives on, and even threatened to "pop" R.H. (See dkt. 103.) In total, Count Two of the indictment puts defendants on notice of eleven acts that constitute their course of conduct.[3] (Id.) At the very least, whether the government can prove a "course of conduct" under 18 U.S.C. § 2261A for defendants' actions on August 28, 2025 is a question for the jury, who will be properly guided on the law by jury instructions.

Defendant Brown's additional argument that the stalking statute requires use of interstate commerce facilities (i.e., a phone) on

---

[2] Indeed, a temporal requirement would lead to line-drawing problems and arbitrary results: e.g., would committing 40 acts over 23 hours be insufficient to violate the statute?

[3] Defendant Brown claims the entire episode lasted "45 minutes." (Brown Mot. 1.) It is unclear how that could be so as defendants followed R.H. from downtown Los Angeles to Baldwin Park - in itself an approximately thirty-minute drive. Even assuming the interactions between R.H. and defendants lasted less than one hour as Brown claims (they did not), as explained above, this is irrelevant.

6

more than one occasion also misses the mark. (Brown Mot. 5-6.) As explained above, courts to directly consider the issue have held "[t]he statute does not require a use of interstate commerce facilities for each of the two or more acts which comprise 'course of conduct.'" Shrader, 2010 WL 2425900, at *4 (noting "if Congress intended as such, it would have explicitly written Defendant's theory into the statutory language."); see also United States v. Elkins, 725 F. Supp. 3d 570, 574 (N.D. Tex. 2024), aff'd, 161 F.4th 899 (5th Cir. 2025) ("The plain language of § 2261A(2) also does not require that each of the '2 or more acts' constituting a 'course of conduct' involve use of a facility of interstate commerce."). Contrary to defendant's assertion, in United States v. Bell, 303 F.3d 1187, 1192 (9th Cir. 2002) the Circuit merely noted the defendant's argument and went on to find that defendant's actions "m[et] the course of conduct requirement . . . and that a rational jury, properly instructed, would have so found." And even if the stalking statute did require more than one act that involves a phone (it does not), nine of the eleven acts listed in the indictment involve a phone. (Dkt. 103 ¶ 2.) The government, therefore, has properly alleged a violation of 18 U.S.C. § 2261A.

**B.  Count Two Is Not Unconstitutional as Applied to This Case**

Finally, defendant Brown's argument that the stalking count is unconstitutional as applied to this case also fails. As an initial matter, Brown improperly construes the words "harass" and "intimidate" as used in section 2261A to mean a defendant must intend the victim receive a "true threat," i.e., "the speaker 'intends to place the victim in fear of bodily harm or death.'" (Brown Mot. 6-7.) Not so. The Ninth Circuit has found that "harass" in the

7

context of the stalking statute means to "[use] words, conduct, or action that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress in that person and serves no legitimate purpose." Osinger, 753 F.3d at 945. And "intimidate" means "to make timid or fill with fear."[4] United States v. Shrader, 675 F.3d 300 (4th Cir. 2012).

Brown argues the stalking statute is unconstitutional as applied because defendants' speech was "directed toward public figures on matters of public concern." (Brown Mot. 7.) But R.H. is not a "public figure" because there is no "clear evidence of [his] general fame or notoriety in the community, and pervasive involvement in the affairs of society," and R.H. has not "thrust [himself] to the forefront of [a] particular controversy in order to influence the resolution of the issues involved." Makaeff v. Trump Univ., LLC, 715 F.3d 254, 265. 267 (9th Cir. 2013) (cleaned up). Nor were defendants documenting a "matter of public concern," i.e., speech that is "fairly considered as relating to any matter of political, social, or other concern to the community" or "subject of legitimate news interest." Snyder v. Phelps, 562 U.S. 443, 453 (2011). Defendants were not live-streaming an ICE enforcement action or "exposing misconduct by an ICE officer."[5] (Brown Mot. 9.) They followed R.H.

---

[4] This is different from the meaning of the word "intimidate" in 18 U.S.C. § 119 (the anti-doxxing statute). As the Circuit made clear, the stalking statute specifically criminalizes "a course of conduct . . . and not [ ] speech," so the protection of the First Amendment is lessened compared to the anti-doxxing statute. Osinger, 753 F.3d at 944 (emphasis in original).

[5] Grasping for straws, Brown argues R.H. was "breaking the law in public by driving without a license plate" when he drove home in his government-issued vehicle. (Brown Mot. 9.) Even assuming this is true, it hardly rises to the level of a "matter of public concern" as outlined above, nor is defendants' conduct after R.H. parked consistent with purportedly documenting a matter of public concern.

8

to his personal residence, where he planned to run an errand with his wife and children. Far from a matter of public concern, defendants were instead recording the mundane intimacies of R.H.'s life.

Brown cites only two out-of-district cases for her proposition that the stalking statute is unconstitutional as applied to defendants here. (Brown Mot. 7.) Neither case helps defendant. In United States v. Cassidy, 814 F. Supp. 2d 574, 583 (D. Md. 2011), the district court found the stalking statute unconstitutional as applied to a defendant where he wrote Tweets and blog postings about A.Z., a "well known religious figure" about whom a non-fiction book had been written. The court found that the defendant's speech was protected because it was "anonymous, uncomfortable Internet speech addressing religious matters." Id. And in United States v. Cook, 472 F. Supp. 3d 326, 328 (N.D. Miss. 2020), the defendant, who had been acquitted on criminal charges, "made disparaging remarks on the internet about various players in his . . . prosecution." The district court noted "the government has not alleged that [defendant] ever directly contacted any of the subjects of his [ ] posts," and found the defendant was "allowed to vent his grievances" about the criminal justice system. Id. at 332, 337.

Cassidy and Cook were cabined to mere internet speech and are a far cry from the facts of this case, where the government has alleged defendants followed R.H. to his private residence from work, live-streamed his location, and verbally accosted R.H. and his family, including by threatening physical violence. As the Circuit held in Osinger, "[a]ny expressive aspects of [defendants'] speech were not protected under the First Amendment because they were 'integral to criminal conduct' in intentionally harassing, intimidating or causing

9

substantial emotional distress" to R.H. and his family.  753 F.3d at 947 (cleaned up); see also United States v. Stevens, 559 U.S. 460, 468 (2010) (acknowledging speech integral to criminal conduct is not subject to First Amendment protection).  Defendant's as-applied challenge thus necessarily fails.  See, e.g., United States v. Gonzalez, 905 F.3d 165, 193 (3d Cir. 2018) (rejecting as-applied challenge, noting "[t]he defendants' speech served no legitimate purpose other than to harass and intimidate [the victim], conduct that is illegal under § 2261A"); Shrader, 675 F.3d at 312 (rejecting as-applied challenge because "[t]here can be little doubt that [defendants'] stalking falls within the conduct the statute is intended to proscribe").

**V.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant Raygoza and Brown's Motions to Dismiss Count Two of the Superseding Indictment (dkts. 114, 127).

10